UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

DANIEL HUBERT ROSS,

    Plaintiff,

    v.

MARYLAND STATE POLICE LICENSING
DIVISION,

    Defendant.

Civil Action No. TDC-15-1402

**MEMORANDUM OPINION**

Plaintiff Daniel Hubert Ross, who is self-represented, filed suit alleging discrimination on the basis of age, sex, and disability by Defendant Maryland State Police Licensing Division (the "Division"). Pending before the Court are the Division's Motion to Dismiss and Ross's Motion for Leave to Amend the Complaint. The Motions are fully briefed and ripe for disposition. No hearing is necessary to resolve the issues. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Dismiss is GRANTED, and the Motion to Amend the Complaint is DENIED WITHOUT PREJUDICE.

**BACKGROUND**

The following facts are presented in the light most favorable to Ross, the nonmoving party:

**I.    Security Guard License Application**

In 1969, Ross was convicted of first-degree murder in North Carolina. Fourteen years later, the United States Court of Appeals for the Fourth Circuit overturned his conviction in *Ross v. Reed*, 704 F.2d 705 (4th Cir. 1983), a decision affirmed by the Supreme Court of the United

States in *Reed v. Ross*, 468 U.S. 1 (1984). After the State of North Carolina decided not to retry Ross, the United States District Court for the Eastern District of North Carolina issued a writ of *habeas corpus* declaring Ross's conviction null and void.

In 2005, Ross began working for the United States Environmental Protection Agency and passed a background investigation in 2009. In 2011, Ross was not permitted to purchase a firearm because of the 1969 murder conviction and a 1965 arrest for "Assault on Female." *Ross v. Fed. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 903 F. Supp. 2d 333, 337 (D. Md. 2012). Ross sued the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives and the Federal Bureau of Investigation and secured the right to obtain a firearm. *Id.* at 342.

On October 22, 2013, Allied Barton Security Services ("Allied Barton") hired Ross as a security guard. To work as a security guard in Maryland, an individual must obtain a license from the Division. Md. Code Ann., Bus. Occ. & Prof. § 19-401(a) (2010). The applicant may work as a security guard while the Division reviews the application. *Id.* § 19-401(b). One of the criteria assessed by the Division is whether the applicant is "of good moral character and reputation." *Id.* § 19-402(a)(3). Conviction of the applicant for a felony or "a misdemeanor that is directly related to the fitness and qualification of the applicant" is a permissible basis for denial. *Id.* § 19-408(4). The Division may also refuse to issue a license if the applicant "fraudulently or deceptively . . . attempts to obtain certification as a security guard." *Id.* § 19-408(2).

On October 23, 2013, the day after Ross was hired, Allied Barton submitted Ross's application for a security guard license to the Division. Although Ross claims that neither he nor Allied Barton intentionally included any false information on the application, the application did not disclose Ross's prior arrests or his now overturned murder conviction. The Division denied

Ross's application after receiving the results of a criminal record check. On January 31, 2014, Allied Barton informed Ross that the Division had rejected his application and that he would be terminated on February 22, 2014 unless the Division reversed its decision.

Ross asked the Division to reconsider. On January 29, 2014, Ross met with Trooper First Class Pouncy of the Division to discuss his application. He informed TFC Pouncy that the 1969 conviction had been set aside. He explained that his position at Allied Barton did not provide him with access to confidential information. Ross also told TFC Pouncy that he suffered from several conditions that impaired his vision. But the Division did not reverse its decision or permit any amendment to his application. On February 22, 2014, Allied Barton terminated Ross.

Ross is an African American man who, at the time of his application to the Division, was 67 years old. After applying, Ross learned that the Division had granted security guard licenses to two of Ross's co-workers—one man and one woman—who had "multiple convictions for theft and larceny." Compl. ¶ 19. Both co-workers are African American and under 40 years of age. Neither has a disability. Ross claims that the Division discriminated against him by denying his application but granting licenses to two individuals with criminal histories that Ross claims render them less fit than him for service as a security guard.

## II.   Procedural History

On May 15, 2015, Ross filed a Complaint in this Court, alleging discrimination on the basis of age, sex, and disability and seeking $1,000,000 in damages. On July 24, 2015, the Division filed a Motion to Dismiss. On August 17, 2015, Ross filed an Opposition to the Motion. On August 28, 2015, the Division submitted a Reply to the Opposition. On November 18, 2015, Ross filed a Motion for Leave to Amend the Complaint. The Division did not submit a response to Ross's Motion.

**DISCUSSION**

The Division argues that the Complaint should be dismissed for failure to state a claim because Ross has not pleaded sufficient facts to demonstrate the Division's liability for discrimination and because the Eleventh Amendment to the United States Constitution immunizes the Division from Ross's claims.

## I.     Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## II.    Age and Sex Discrimination

Ross claims that the Division violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* (2012), by denying his application for a security guard license because of his age. Ross also alleges sex discrimination, though the Complaint does not specify a cause of action. The Court construes this allegation as a claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* (2012).

The Division argues that it cannot be held liable for age or sex discrimination because it was not Ross's employer. The ADEA and Title VII both bar discrimination by an "employer," "employment agency," or "labor organization." 29 U.S.C. § 623; 42 U.S.C. § 2000e-2. Courts have interpreted these categories broadly to cover a variety of employment relationships. *See EEOC v. Seafarers Int'l Union*, 394 F.3d 197, 202-04 (4th Cir. 2005). For instance, an entity that controls the plaintiff's access to employment can be held liable for age or sex discrimination under some circumstances. *See Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338, 1341-42 (D.C. Cir. 1973) (holding that a male duty nurse could sue a hospital under Title VII when the hospital, which did not employ him, refused to refer him for employment by female patients). But the definition of "employer" does not extend to state licensing agencies. *See, e.g., Woodard v. Va. Bd. of Bar Examiners*, 598 F.2d 1345, 1346 (4th Cir. 1979) (per curiam) ("The Board of Bar Examiners is neither an 'employer,' an 'employment agency,' nor a 'labor organization' within the meaning of [Title VII]."); *Camacho v. Puerto Rico Ports Auth.*, 369 F.3d 570, 577 (1st Cir. 2004) (holding that a Port Authority that revoked the plaintiff's license to be a harbor pilot was the equivalent of a state licensing and regulatory agency and is not an employer under the ADEA); *George v. New Jersey Bd. of Veterinary Med. Examiners*, 794 F.2d 113, 114 (3d Cir. 1986) (holding that Title VII "is not applicable to the licensing functions of a public agency exercised under the police powers of a state"); *Haddock v. Bd. of Dental Examiners of Cal.*, 777 F.2d 462, 463 (9th Cir. 1985) (holding that the Board of Dental Examiners was not an employer under Title VII of applicants for a dental license); *Darks v. City of Cincinnati*, 745 F.2d 1040, 1041-42 (6th Cir. 1984) (holding that a city that provided licenses to operate dance halls was not an "employer" under Title VII of individuals who were denied licenses).

The Division is a state licensing agency. It did not hire or fire Ross, and it was not his employer. Consequently, neither the ADEA nor Title VII provides Ross with a cause of action against the Division. His claims for age and sex discrimination therefore must be dismissed. *See, e.g.*, *Woodard*, 598 F.2d at 1346.

## III. Americans with Disabilities Act

Ross also claims that the Division violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* (2012), when it allegedly rejected his application because of his vision disability. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A regulation implementing this provision states:

> A public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability.

28 C.F.R. § 35.130(b)(6) (2015).

To establish a violation of Title II of the ADA, a complaint must allege that the plaintiff (1) has a disability, (2) is "otherwise qualified to receive the benefits of a public service, program, or activity," and (3) "was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005). The Division does not dispute that Ross has a "disability" or that it is a "public entity" within the meaning of the ADA. *See* 42 U.S.C. § 12102(1) (defining "disability"); *id.* § 12131(1) (defining

6

"public entity"); *see also Clark v. Va. Bd. of Bar Examiners*, 880 F. Supp. 430, 442 (E.D. Va. 1995) (noting that Title II applies to state licensing boards).

The Division, however, argues that Ross has not alleged facts demonstrating that the Division denied Ross's application because of his disability. A plaintiff alleging discrimination on the basis of disability under Title II must show that "his or her disability played a motivating role" in the denial of benefits.[1] *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 470 (4th Cir. 1999). Ross alleges that the Division awarded licenses to two of Ross's co-workers, who, like Ross, had criminal records, but, unlike Ross, did not have a disability. Ross does not claim, however, to have disclosed his disability in his security guard license application. Instead, he asserts that he first informed the Division of his disability during his meeting with TFC Pouncy *after* the Division had already denied his application. Where the Division denied Ross's application before it ever learned of his disability, the fact that the Division did not reconsider its decision upon learning of Ross's disability does not support an inference that the denial was because of the disability. Ross has thus failed to state a claim for discrimination under the ADA.

## IV.  Motion for Leave to Amend

Ross also filed a Motion for Leave to Amend the Complaint seeking to assert claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The Motion does not attach a proposed amended complaint and so fails to comply with the requirements of Local Rule 103.6. Consequently, the Motion is denied.

---

[1] It is possible that a more stringent standard of causation applies in the wake of *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). *See Bolmer v. Oliveira*, 594 F.3d 134, 148-49 (2d Cir. 2010) (noting that *Gross* may require Title II plaintiffs to show that disability was a but-for cause of the public entity's decision). The Court need not decide which standard of causation applies because Ross fails to state a claim under even the more forgiving "motivating factor" standard of causation.

However, where Ross has not yet amended his Complaint, and no Answer has yet to be filed, the Court will permit Ross to submit a revised Motion that complies with Local Rule 103.6 and asserts claims that are not futile. *See* Fed. R. Civ. P. 15(a)(2); *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986) (noting that leave to amend should be denied as futile "when the proposed amendment is clearly insufficient or frivolous on its face"). As discussed above, there is no basis to assert a claim under the ADEA, Title VII, or the ADA, so those claims are dismissed with prejudice and may not appear in any amended complaint.

The Court cannot determine at this time whether Ross could assert a plausible claim under the Due Process or Equal Protection Clauses. At least one federal court has held that a statute automatically barring convicted felons from receiving security guard licenses violates the Equal Protection Clause. *Smith v. Fussenich*, 440 F. Supp. 1077, 1078, 1081-82 (D. Conn. 1977). Here, Maryland law authorizes, but does not require, the Division to deny security guard licenses to applicants with prior felony convictions, Md. Code Ann., Bus. Occ. & Prof. § 19-408(4), and it is not clear whether the Division denied Ross's application because of his now-vacated felony conviction or because of his failure to disclose his prior criminal history. Under these circumstances, the Court does not find at this early stage that an equal protection or due process claim would be futile, so it will permit a Motion seeking leave to file an amended complaint asserting such claims.

The Court notes, however, that the Division, a state agency, is not a "person" within the meaning of 42 U.S.C. § 1983 and cannot be sued under that statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989. Consequently, Ross's Motion to Amend will be denied as futile if the proposed amended complaint does not seek to change the named party to a state official in his individual capacity, or in his official capacity if the only relief sought is prospective

injunctive relief to remedy an ongoing violation of federal law. *See* Fed. R. Civ. P. 15(c)(1)(C) (referencing amendments that change the party against whom the claim is asserted); *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Will*, 491 U.S. at 71 n.10.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss is GRANTED.  The Motion to Amend the Complaint is DENIED WITHOUT PREJUDICE.  A separate Order shall issue.


Date: March 23, 2016                                    /s/
                                                         THEODORE D. CHUANG
                                                         United States District Judge